## Arthur, Appellant, *v.* Pittsburgh et al.

Argued March 29, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Crawford Scott,* for appellant.

*Anne X. Alpern,* First Assistant City Solicitor, *Churchill Mehard,* City Solicitor, and *John R. Bentley,* Assistant City Solicitor, for appellees.

OPINION BY MR. JUSTICE MAXEY, April 18, 1938:

This case originated in a petition for a writ of alternative mandamus filed by a member of the police force of the City of Pittsburgh. The petitioner entered the service on March 7, 1912, as a sub-patrolman and served as such until March 1, 1916. He was then promoted to the rank of regular patrolman and served as such until March 10, 1919, on which latter date he was discharged for cause. On July 29, 1926, he again entered the service as a sub-patrolman and served as such until June 25, 1927, when he was promoted to the rank of patrolman and served as such until February 15, 1928. He was then promoted to the rank of lieutenant and served as such until June 1, 1937. His entrance into the service and his various promotions were after his passing civil service examinations. He served as sub-patrolman 4 years and 10⅔ months, as regular patrolman 3 years and 8 months, as lieutenant 9 years and 3½ months. On May 29, 1937, the Civil Service Commission of Pittsburgh wrote a letter to the Director of the Department of Public Safety, advising him that as a result of an examination of the records the Commission found that Lieutenant Edward J. Arthur was illegally appointed to his position by reason of the fact that he lacked required legal service standing on the date of his appointment, and that in view of that fact the Civil Service Commission would not certify any payroll bearing his name for services rendered as Police Lieutenant after May 31, 1937. The petitioner was reduced to the rank of patrolman at a monthly salary of $192.50. He accepted this demotion under protest. His salary as lieutenant was $225 a month.

The petitioner's appeal was heard by the Civil Service Commission and it held that "since his original term of service was terminated by dismissal for cause, such service cannot be counted as a period, or portion of a period, prerequisite to a promotion to the rank of lieutenant during any subsequent period of employment; that since appellant's reëntry to the Police Bureau was not by reinstatement, but by open, competitive examination of first instance followed by certification and appointment of the appellant to the rank of Substitute Patrolman, i. e., as if he had had no previous service in the Bureau of Police; that by reason of the foregoing facts, any service credit offered by the appellant as a prerequisite to promotional examination and appointment to the position of Lieutenant of Police should have been reckoned from the date of his second appointment as a Regular Patrolman (June 25, 1927) to the date of promotion to the rank of Lieutenant (February 15, 1928); that at the date of his promotional appointment as Lieutenant, the appellant lacked more than twenty-eight months of the three-year service period then and now prerequisite to such appointment; the said appointment to the rank of Lieutenant was, therefore, illegal." An appeal to the court of common pleas was unavailing. The petitioner's demurrer to defendants' answer was overruled, and the petition for a writ of mandamus was dismissed at petitioner's cost.

Rule 7, Section 5(A), of the Civil Service Commission, reads as follows: "The line of promotion in the Bureau of Police shall be: . . . For Lieutenant—Any Sergeant, Patrolman, . . . who has a service record of three (3) years." The court below held that this phrase, "service record," means a *continuous* or *uninterrupted* service record. It said: "Section 16 of the Civil Service Act of May 23, 1907, P. L. 206, provides in part that: 'Promotions shall be based upon merit—and upon the superior qualification of the person promoted, as shown by his previous service and experience.' The

Civil Service Commission, when it promoted petitioner to the rank of lieutenant, either overlooked or disregarded the fact that his record had been marred by a discharge from the service for cause, and acted in plain violation of the aforesaid section of the Civil Service Act. . . . The only previous service that petitioner had that could be considered by the Civil Service Commission was his record after his reëntry into the service as a patrolman."

In so ruling, the court erred in treating a "marring" of an officer's record as equivalent to chronal insufficiency of service. His promotion to a lieutenancy on February 15, 1928, was made after examination and presumably it was "based [as the Civil Service Act requires] upon merit and upon his superior qualifications as shown by his previous service and experience." Since he merited the promotion he received, a denial of it on account of the fact that he had been "removed for cause" on March 10, 1919, would have been an exhibition not of administrative fidelity to law but of a punitive spirit.

The provision making a "service record of three years" a prerequisite to a promotion to a lieutenancy of police is obviously a practical expression of the sound theory that no person should be made a police lieutenant until he has had three years' experience in a subordinate rank. "There is no school like experience," and this is particularly true for those who have to be schooled to exercise police command. Experience is defined as "state, extent, or duration of being engaged in a particular study or work; the real life as contrasted with the ideal or imaginary": Webster's New International Dictionary. Nowhere does "experience" evaporate into *in*experience by interruption. The discharge of this officer in 1919 was only an "experience" which *augmented* his experience, and doubtless it had a salutary effect on his future conduct upon his restoration to police duty.

It would be arbitrary and anomalous to hold that a transgression of the bounds of good conduct ipso facto

blots out as though it had never been, the transgressor's entire experience within those bounds. It is a well known fact that whenever this nation has been engaged in wars, it has availed itself of officers who had retired from service and it has given them important commands because of their previous, though interrupted, experience, sometimes regardless of the fact that their retirement from service was involuntary. Those in authority do not take the illogical position that a soldier's experience dates from his last enlistment.

This record presents to us the case of an officer who has been a lieutenant of police for more than nine consecutive years with an unblemished record and who previous to his promotion to that rank had had nearly nine years' experience as a police officer and who is now reduced in rank because, so it is alleged, when he was made lieutenant he did not then have a "service record of three years." Since no fraud was practiced by the appellant in securing his promotion to a lieutenancy in 1928 (and none is charged), the practical effect of the order and adjudication challenged is that after nearly 18 years' experience on the police force, the most of which was served by him as lieutenant of police, he was demoted from that lieutenancy because of "lack of experience." The challenge is well made, for the order and adjudication do equal violence to logic, to the language of the cited section 5(A) of Rule 7 of the Civil Service Commission of Pittsburgh, and to the spirit of the Civil Service Law.

The order of the court below is reversed; the record is remitted with directions to sustain the demurrer and to order the reinstatement of plaintiff in the position from which he was unlawfully removed.