## Seidl's Appeal.

Argued October 8, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Abraham Wernick,* Assistant City Solicitor, with him *Francis F. Burch,* City Solicitor, for appellant.

*Charles G. Gartling,* for appellee.

OPINION BY KELLER, P. J., February 28, 1941:

The appellee, Theresa Seidl, while a resident of Philadelphia, received certain mortgages as her share of her first husband's estate and placed them in a safe deposit box with the Olney Bank & Trust Company of Philadelphia. Thereafter, in June 1930, she married Jacob Seidl, a resident of Jugoslavia, and has lived there since her second marriage. In the summer of 1931 she appointed her brother, John Bogshutz, as her attorney in fact, to collect the interest and principal on said mortgages, with power to satisfy them and reinvest the proceeds.

From 1934 to 1938, inclusive, John Bogshutz filed on her behalf with the proper county official a yearly personal property tax return for the said mortgages and voluntarily paid the four mill tax assessed in accordance with the return so made by him for her.

On March 17, 1939 John Bogshutz filed with the Board of Revision of Taxes of Philadelphia County applications for refund to Mrs. Seidl of all such taxes paid by him for the years 1934 to 1938, inclusive, claiming the refund under the city ordinance of December 20,

1922, Book of Ordinances, p. 687. The applications for refund were refused by the board on March 30, 1939. On May 25, 1939 appeals were filed in the courts of common pleas, which were consolidated and on December 8, 1939 were heard together under the first appeal—for the year 1934—to No. 5265 March Term 1939, Common Pleas No. 6, before Judge FLOOD.

The hearing judge dismissed the appeals relating to the claims for refund of taxes for the years 1934, 1935, 1936 and 1937, because they were barred by the limitation of two years contained in the Act of July 12, 1935, P. L. 682, amending the Act of May 8, 1929, P. L. 1656 and the Act of May 21, 1937, P. L. 786, supplying it; but sustained the appeal relating to the claim for refund of taxes for the year 1938, and ordered a refund to Mrs. Seidl of the personal property taxes paid on her behalf for that year in the sum of $209.60, with interest from the date of payment. Exceptions filed by the City of Philadelphia to this order and certain other matters were dismissed and the adjudication was confirmed absolutely.

The City alone appealed and by its statement of questions involved and assignments of error has confined its appeal to the order or decree directing the refund of the taxes for 1938.

The authority of the county to grant a refund of taxes on real or personal property, voluntarily paid, where the payment was erroneously or inadvertently made, was given by the Act of May 8, 1929, P. L. 1656.[1]

---

[1] "An Act Authorizing county commissioners to refund taxes erroneously and inadvertently paid by persons and corporations into the county treasury. Section 1. Be it enacted, &c., That whenever hereafter any person or corporation of this Commonwealth has erroneously or inadvertently paid or caused to be paid into a county treasury, directly or indirectly, any tax or taxes on real or personal property, under an assumption that such taxes were due and owing, when in fact such taxes or a part thereof were not due and owing to the county, then in such cases the

While it has been amended and repealed and supplied by other statutes,[2] and extended so as to cover other political subdivisions,[3] it remains in general principle and language unchanged.

Before the Act of 1929 such taxes voluntarily paid to counties could not be refunded, even though erroneously paid: *Shenango Furnace Co. v. Fairfield Twp.*, 229 Pa. 357, 78 A. 937; even if the law under which they were levied was unconstitutional: *Payne v. School District*, 168 Pa. 386, 31 A. 1072; *Peebles v. City of Pittsburg*, 101 Pa. 304.

It will be noted that the Act of 1929, supra, does not *direct* or *require* a refund of such taxes erroneously but voluntarily paid; it only *authorizes*, that is, warrants or makes legal, what before could not legally be done. The General Assembly no doubt recognized that commitments may have been made and expenditures incurred on the faith and strength of these taxes and therefore while it *authorized* their refund it did not *order or direct* it, leaving it discretionary with the authorities whether or not the refund should be made.

We think this is implicit in the case of *Arrott v. Allegheny County*, 328 Pa. 293, 194 A. 910, where one who had voluntarily paid personal property taxes brought an action of assumpsit against the Commissioners of Allegheny County to secure their refund, claiming that they had been erroneously and inadvertently paid. The Supreme Court, speaking through Mr. Justice DREW, in holding that assumpsit would not lie, said: "Prior to the passage of the Act of 1929,

county commissioners, upon due proof of any such erroneous or inadvertent tax payments, are hereby authorized to draw their warrant on the county treasurer, in favor of such person or corporation, to make refund of such tax or taxes to which the county has no valid claim, out of the county funds."

[2] Acts of July 12, 1935, P. L. 682; July 18, 1935, P. L. 1210; May 21, 1937, P. L. 786; June 2, 1937, P. L. 1211.

[3] Act of June 2, 1937, P. L. 1211.

*supra*, county commissioners were powerless to grant refunds of taxes erroneously but voluntarily paid, without protest, even in the most meritorious cases; nor was there any jurisdiction in the courts to grant such relief: *Shenango Furnace Co. v. Fairfield Township*, 229 Pa. 357, and cases therein cited; ...... Plainly that act confers no such jurisdiction (cf. *Com. ex rel. Howley v. Mercer*, 190 Pa. 134; *Luzerne County Election Returns*, 301 Pa. 247); it merely authorizes the county commissioners to make refund of taxes erroneously or inadvertently paid upon due proof of such payment. Had the legislature intended to provide for an appeal to the courts it would have made explicit provision therefor: see 9 Standard Pa. Practice, section 13, footnote 16. Jurisdiction must be clearly conferred; it cannot be assumed by implication. This statute is in derogation of the common law and must be strictly construed: *Locust Street Subway Case*, 319 Pa. 161; *Guthrie's Estate*, 320 Pa. 530. The power to bring an action against the Commonwealth or any of its political subdivisions must be clearly and expressly given. It seems self-evident that no such permission has been here conferred."

Whether the words "an appeal to the courts" were used in their technical sense or in the meaning of "recourse to the courts", we think they plainly implied that without some specific grant to the courts of the power to supervise or review the exercise of the authority so given to the commissioners or proper officials, their action in the matter of a refund is not reviewable or subject to be reversed by the courts. Where the legislature intended to make a refund or repayment mandatory (*vide*, Act of April 19, 1889, P. L. 37; *Kaemmerling v. New Castle Twp. School Dist.*, 297 Pa. 44, 146 A. 144), or the discretion reviewable by the courts, it expressed itself in unmistakable language.

An examination of the paper books in the Arrott case helps to confirm us in our opinion; for the learned and

able County Solicitor, Charles Alvin Jones, now a judge of the circuit court of appeals, did not rest his case on the bar of the statute of limitations, relied on by the court below, but, *inter alia,* placed it squarely on the position that the matter of refunding such taxes was purely discretionary with the county commissioners and that the Act conferred no power on the court of common pleas, either at law or in equity, (1) to determine the question whether the payment of taxes was inadvertent or erroneous, or (2) to compel a revision or modification of the commissioners' decision, resulting from the exercise of such discretion (*Souder v. Phila.,* 305 Pa. 1, 8, 156 A. 245), saying, inter alia (p. 16) : "If it were the Legislative intent that the county commissioners' decision should not be final, the Legislature could very easily have provided an appeal from the decision of the county commissioners to the court of common pleas and the appellate courts, or could have specifically set forth in the act a right of action."

These words were before him when Mr. Justice DREW wrote, "it [the Act of 1929] merely authorizes the county commissioners to make refund of taxes erroneously or inadvertently paid upon due proof of such payment. Had the legislature intended to provide for an appeal to the courts it would have made explicit provision therefor" (p. 295) ; and in our opinion they were used in the sense suggested by Mr. Jones.

But the court below supplied this want of grant of review or appeal in the Act of 1929 by recourse to Section 1 of the Act of March 14, 1865, P. L. 320, entitled "An Act to promote the more certain and equal assessment of taxes in Philadelphia", which, after providing for the appointment of a board of revision of taxes with power "to revise and equalize the assessments, by raising, or lowering, the valuations, either in individual cases, or by wards, to rectify all errors, and to require the attendance of the assessors, or other citizens, before them, for examination on oath or affirmation;"

continued, "And the said board of revision shall hear all the appeals and applications of the taxpayers, subject to an appeal from their decision to the court of common pleas of the county, whose decision shall be final, and if the appeal to the court shall be groundless, the appellant shall pay their costs of court; the city commissioners shall have no power to correct, or revise, the taxes, but shall receive, in writing, the request of taxpayers to have their taxes reduced, and lay them before the board of revision, at the next meeting; the board of revision shall hear the taxpayers, of their respective wards, in succession, of which notice shall be given, as now required by law, by the commissioners and assessors; and the said board of revision shall, alone, by a majority of them, exercise all the powers heretofore vested in the county board of revision, but shall not, in any instance, lower the aggregate valuation of the county;"

An examination of the entire act will show that it relates to the subject set forth in the title,[4] viz., the *assessment* of taxes, and contains no reference whatever to the *refund or repayment* of taxes paid; and that in the clause, "the said board of revision shall hear all the appeals and applications of taxpayers", the expression 'applications' refers to the requests or applications of taxpayers to have their taxes reduced, that is, to have their *assessments* lowered. As to the expression 'rectify all errors', that also clearly refers to errors in assessment. See also *Pittsburgh School District v. E. S. S. Land Co.,* 140 Pa. Superior Ct. 590, 597, 14 A. 2d 619.

The city contended that the Act of 1865, by the language in the body of the statute was limited to assessments of *real estate* and could not be applied to assess-

---

[4] By the amendment of 1864 to the Constitution of 1838 (Art. XI, sec. 8) it was provided, "No bill shall be passed by the legislature containing more than one subject, which shall be expressed in the title, except appropriation bills."

ments of personal property for county purposes not contemplated when the act was passed. The language in the Act is peculiarly appropriate to real estate and does not specifically include any other subject of taxation, but we are not altogether satisfied that it would not apply also to *assessments* of personal property provided for by subsequent legislation—as by the Act of 1913 and its amendments and supplements—so as to include the right of *appeal from assessments and revisions of assessments,* as clearly contemplated by the provisions of the Act of June 17, 1913, P. L. 507, sec. tions 5 and 12, inter alia. We are satisfied, however, that dealing as the Act of 1865 did, wholly with the subject of the *assessment* of taxes, and appeals and requests for reduction therefrom, it could not properly be extended to apply to the *refund of taxes voluntarily paid,* created under the Act of 1929, which makes no provision whatever for an appeal from the discretionary authority committed to the commissioners or the board of revision.

It is interesting to note that section 1 and 8 of the Act of 1865, the former of which served as the basis for the lower court's decision, were specifically repealed by the Act of June 27, 1939, P. L. 1199, entitled "An Act relating to the assessment of real and personal property and other subjects of taxation in counties of the first class; providing for ...... the time and manner ...... of the revision and notice of assessments and of appeals therefrom etc." See last paragraph of page 1204. The clause in the Act of 1865 relating to appeals was supplied by sections 14 and 15 of the Act of 1939, supra, which apply to assessments of personal property under the Act of June 17, 1913, P. L. 507, and its amendments and supplements, no less than to real estate. See sections 11 and 12.

Sections 14 and 15 of the Act of 1939, which supplanted and superseded section 1 of the Act of 1865, supra, read as follows:

"Section 14. Any person aggrieved by any assessment as the same shall be fixed following revision of assessments by the board, may file an appeal therefrom with the board. Appeals from real estate assessments shall be filed on or before the first Monday of October. Other appeals shall be filed within the time fixed by law, or in cases in which no time is provided by law, within such time as the board shall prescribe. The board shall set a time or times at which it shall hear all appeals which have been properly filed. The board shall either affirm the assessment or shall make such revision thereof as shall appear to the board to be just and reasonable. The board shall complete its hearings of appeals and shall dispose of all appeals before it as promptly as possible.

"Section 15. Any person aggrieved by the disposition made by the board of any appeal may file a petition for review of the assessment in the court of common pleas of the county, and may appeal from the decision made thereon by the court of common pleas to the Supreme or Superior Courts, as is now provided by law."

However, we are not basing our decision on the fact that the Act of 1865 was repealed before the hearing took place and the decision here appealed from was filed; though there is authority for the proposition that proceedings taken under a statute which is repealed, without a saving clause—or its equivalent, a substantial re-enactment—fall with the repeal. See, inter alia, *United States v. Chambers*, 291 U. S. 217, 223-225; *Phila. v. Bartell*, 139 Pa. Superior Ct. 319, 322, 11 A. 2d 563; *Com. v. Beattie*, 93 Pa. Superior Ct. 404, 412. We cite it for the reason that the Act of 1939 makes clear beyond all peradventure—what we think was fairly to be understood from the title and body of the Act of 1865—that the provision for appeals from the board of revision of taxes to the court of common pleas related only to the revision of, or refusal to revise,

*assessments,* and could not be extended to the refusal of the board to allow a *refund of taxes* voluntarily paid, as authorized by the Act of 1929, supra; that the latter was wholly outside and beyond the scope of the Act of 1865 and hence could not be included within its provision for appeal to the common pleas. The fact that the legislature in 1939, with full knowledge of the Act of 1929 and its amendments and supplements of 1935 and 1937, supra, when it dealt with the same subject matter covered by the Act of 1865 and supplied the provisions of that Act relative to appeals, restricted its appeals to the common pleas to appeals from *assessments* and revisions of *assessments,* confirms us in our view.

It is established as a principle of our law that an appeal does not lie to the common pleas on tax assessments and settlements unless a statute authorizes it (*Clinton School District's App.,* 56 Pa. 315, 317; *Stewart v. Maple,* 70 Pa. 221, 223; *Hughes v. Kline,* 30 Pa. 227, 230, 231; *Moore v. Taylor,* 147 Pa. 481, 484, 23 A. 768; *Van Nort's App.,* 121 Pa. 118, 129, 15 A. 473; *Susquehanna Collieries Company's App.,* 335 Pa. 337, 342, 343, 6 A. 2d 831; *Stratford v. Franklin Paper Mills,* 257 Pa. 163, 165, 101 A. 349; *Phila. v. Phillips,* 65 Pa. Superior Ct. 578, 582, 583); and, consequently, many statutes specially provide for an appeal to the common pleas and the appellate courts. See 9 Standard Pa. Practice, Appeals, sec. 13, footnote 16. In *Drake's Appeal,* 233 Pa. 8, 81 A. 891, it was held that an appeal to the common pleas did not lie from the *classification* of property as urban or rural, by the board of revision of taxes, (the board here in question). It was there said (p. 10): "The Act of 1868 [March 24, 1868, P. L. 443] has conferred upon the board of revision of taxes the authority to classify real estate within the city of Philadelphia for the purpose of determining what proportion of the general tax rate is to be paid by two of the classes, and no statute allows

an appeal from the decision of that tribunal. If the authority conferred upon it should be abused, the power of a court of equity would be adequate to restrain the perpetration of a palpable wrong: *Erie v. Reed,* 113 Pa. 468. Under the Act of April 19, 1889, P. L. 37, an appeal lies to the common pleas from an assessment or valuation by county commissioners or a board of revision of taxes, but this is very different from classification. Of the assessment or valuation of his property the appellant is not complaining. Appeal quashed."

Nor did section 8 of the Act of April 28, 1937, P. L. 480, relating to tax assessments in counties of the first class, etc. (repealed by the Act of 1939, supra) supply the right of appeal. It provided:

"Section 8. At the time and place fixed for the appeal, whether at a triennial or inter-triennial assessment, the board of revision of taxes shall attend and hear all persons who may apply for redress, and grant such relief as to them shall appear just and reasonable: Provided, That the board of revision of taxes shall not make any allowance or abatement in the valuation of any real estate in any other year than that in which the triennial assessment is made, excepting where buildings or other improvements have been destroyed subsequently to such triennial assessment, or where a new assessment has been made as hereinbefore authorized, in which cases such allowance or abatement may be made.

"From any decision of the board an appeal may be had to the court of common pleas of the county as now provided by law. On any such appeal the appraisement made by the board of revision of taxes shall be prima facie evidence of the value of the property involved in such appeal."

Although the second paragraph read, "From any decision of the board," the phrase "as now provided by law" prevented the extension of the right of appeal to cases where it had not existed before; it is also

worthy of note that the section as a whole related to assessments, and the appeals provided for therein were appeals from decisions of the board relating to assessments.

With this view of the case it is not necessary to devote special attention to the contention of the city that the petition to the board for refund of taxes paid and the petition for appeal to the court below were not based on the Act of 1865, on which the lower court rested its action, but were based on the ordinance of December 20, 1922, p. 687, which seems to have dropped out of the case entirely. There is much to be said for the city's contention that the board of revision cannot be reversed for limiting its consideration and action to the matters presented to it in the petition before it, but we need not rule upon it for we are satisfied that the Act of 1865 did not supply the right of appeal from the decision of the board refusing to refund the tax voluntarily paid on Mrs. Seidl's behalf, which the Act of 1929, *authorizing* a refund, failed to give.

We might add that we are in entire accord with the decision of the Court of Common Pleas No. 3 of Philadelphia County in the *Appeal of The Pennsylvania Company*, 36 D. & C. 212.

See also, *Wilson v. Phila. School Dist.*, 328 Pa. 225, 243, 195 A. 90, 100.

The assignments of error are sustained and the decree is reversed at the costs of the appellee.