Hotel Casey Company, Appellant, *v.* Ross et al.

Argued November 24, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John Y. Scott,* with him *Laurence F. Casey,* for appellant.

*Frank A. Sinon,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellees.

OPINION BY MR. JUSTICE PARKER, January 12, 1942:
This is an appeal by Hotel Casey Company from a decree of the Court of Common Pleas of Dauphin County

quashing a petition for a writ of mandamus. After this court held, in *Wellsboro Hotel Company's Appeal,* 336 Pa. 171, 7 A. 2d 334, that hotels operating dining rooms for the convenience of their guests were not subject to the payment of the restaurant mercantile license tax imposed by the Act of April 25, 1907, P. L. 117, sec. 1 (72 PS §3131), the plaintiff applied to the Pennsylvania Board of Finance and Revenue for a refund of taxes paid in the years 1935 to 1939 under an erroneous interpretation of the taxing statute. The application was made within five years of the payment of the taxes. The board refused the refund without any findings of fact or discussion. We have the bare order: "And now, to wit, August 7, A. D. 1940, After full consideration, the prayer of this petition is hereby refused." Plaintiff then petitioned the Court of Common Pleas of Dauphin County for a writ of alternative mandamus commanding the board to grant the refund or show cause why they should not do so. That court, on petition of the Attorney General, quashed the writ on the grounds that the tax sought to be recovered was not a tax "to which the Commonwealth is not rightfully or equitably entitled", and that mandamus would not lie.

From the pleadings it must be taken as conceded, for present purposes, that the taxes in question were paid voluntarily but that they were not legally due from the plaintiff under the law as declared in the Wellsboro Hotel Company case, supra. In the absence of any refunding statute, the common law rule in this state is that taxes paid voluntarily and without protest cannot be recovered: *De La Cuesta v. Insurance Co.,* 136 Pa. 62, 20 A. 505; *Shenango Furnace Co. v. Fairfield Township,* 229 Pa. 357, 78 A. 937; *Phila. & R. C. & I. Co. v. Tamaqua School District,* 304 Pa. 489, 494, 156 A. 75. Certain statutes have been passed by our legislature to meet this situation. Section 503 of the Fiscal Code, Act of April 9, 1929, P. L. 343, as amended by Act of June 6, 1939, P. L. 261 (72 PS §503), provides in part as follows: "The

Board of Finance and Revenue shall have the power, and its duty shall be, (a) To hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonus, or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled, and, upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonus, or other moneys, out of any appropriation or appropriations made for the purpose, or to credit the account of the person, association, corporation, body politic, or public officer entitled to the refund. All such petitions must be filed with the board within two years of the payment of which refund is requested, except . . . (4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by the court of final jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. In such case, the petition to the board shall be filed within five years of the payment of which a refund is requested. . . . (e) The action of the board on all petitions filed under this section shall be final."

The court below based its action in quashing the petition on two grounds. It held first that since, under the doctrine stated in the cases of *De La Cuesta v. Insurance Co.,* supra, and *Shenango Furnace Co. v. Fairfield Township,* supra, taxes paid voluntarily could not be recovered, therefore "the tax sought to be recovered here is not tax 'to which the Commonwealth is not rightfully or equitably entitled' ", a condition to the right of refund fixed by the Code. It also held that since §503 of the Code provides that the action of the board shall be final, this action of mandamus will not lie. In support of the latter conclusion that court cited *Short's Estate,* 315 Pa. 561, 173 A. 319, which seemed to hold that certiorari would not lie from the action of the board on a petition for refund of taxes under §503 of the Fiscal Code.

We find no merit in the first ground, for such interpretation would exclude from the operation of the act

all petitions for refunding of taxes paid voluntarily. Such an interpretation would defeat the evident purpose of the act when considered as a whole. The act refers to taxes which have been paid but to which the Commonwealth is not *rightfully* or *equitably* entitled. It thereby recognized a moral obligation on the part of the Commonwealth to return moneys which, under the decisions such as the Shenango Furnace Company case, supra, were not legal obligations. Clause (a) (4) of §503 conclusively shows that the legislature had in mind something more than taxes paid involuntarily, for it established a longer period of limitation for the filing of a petition for refund when any tax or other money had been paid to the Commonwealth under the provisions of an act subsequently held by the court of final jurisdiction to be unconstitutional or paid under an interpretation of a provision subsequently held by such court to be erroneous. That is precisely the situation in the present case. It would therefore seem to be indisputable that the legislature, when it authorized refunds to be made, had in mind just such circumstances, among others, as apparently exist here. It is also significant that the Commonwealth did not, either in its brief or on the oral argument, make any attempt to support this first position of the court below.

The second ground relied upon by the court below is apparently the one which the appellees attempt to support. The position taken is that the legislature delegated to the Board of Finance and Revenue complete and final authority at its discretion to determine what, if any, refunds shall be made to taxpayers, subject only to the condition that the taxes or moneys paid are those "to which the Commonwealth is not rightfully or equitably entitled." The full extent of the claim is apparent when stated in another and equivalent form, to wit: The board has jurisdiction to pass upon and determine all claims for refunds where taxes, etc., have been paid to the Commonwealth to which moneys "the Commonwealth is not

rightfully or equitably entitled", but nevertheless the board is clothed with a "complete" discretion to determine whether the refund shall in fact be made. If such are the powers of the board, not only did the legislature fail to provide any standard, or norm, for the guidance of the board, but it specifically authorized the board to act without standards. We cannot imagine a clearer example of illegal delegation of authority. The appellees, apparently anticipating such a conclusion, urged a reason why the principle was not applicable. They say: "In granting refunds the Commonwealth is not affecting any person's rights, for there is no right to a refund." They argue that since it is a mere gratuity to the taxpayer, property rights are not involved and the board has unlimited discretion to determine the persons who may be the recipients of their bounty. Although this argument should fall of its own weight, it is also in clear disregard of Article III, §7, of our Constitution, which provides: "The General Assembly shall not pass any local or special law . . . refunding moneys legally paid into the treasury." Since the legislature itself cannot refund taxes voluntarily paid except by laws of general operation or laws embodying reasonable classifications, it obviously cannot delegate an unlimited discretion to one of its creatures, an administrative body, to do that very thing. It is clear that if this act is to be construed to have the meaning suggested by the appellees, we would be compelled to hold it unconstitutional. .

It is the duty of this court, however, in construing the statute to give it, if possible, an interpretation which will prevent any conflict with the Constitution: *In re Shelley's Petition*, 332 Pa. 358, 2 A. 2d 809; Statutory Construction Act of May 28, 1937, P. L. 1019, §52 (46 PS §552). Section 503, while giving the board the *power*, at the same time made it its *duty* "to hear and determine any petition for the refund of taxes . . . paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled", and likewise

made it its duty upon the allowance of such petition "to refund such taxes . . . or to credit the account of the . . . [taxpayer] entitled to the refund." It is a duty that is placed upon an agency of the state which implies more than mere permissive authority. It would seem both illogical and unreasonable to assume that, when the legislature attempted to correct a rigor of the law that caused an injustice and in so acting made it the duty of one of its fiscal agents to determine whether a tax had been collected to which the State was not rightfully or equitably entitled and made specific provision for a refund or credit in the event of such a finding, it intended only such illusory relief as would leave the granting of the refund to the unlimited discretion of the agency.

While such words as "authorized" and "empowered" are usually words of permission merely and generally have that sense when used in contracts and private affairs, when they are used in statutes they are frequently mandatory and imperative. Consequently, where a statute directs the doing of a thing for the sake of justice, the word "may" means the same thing as the word "shall". The principle is thus stated in *Supervisors, Rock Island Co. v. U. S.,* 71 U. S. 435: "The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the Legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.' " There the language used was less mandatory in

form than here.[1] Also, see *Galena v. U. S.*, 72 U. S. 705. The conclusion at which we have arrived is the same as that reached in other jurisdictions. See *People ex rel. v. Supervisors of Otsego Co.*, 51 N. Y. 401, where the specific question involved was the refunding of taxes illegally paid. Also, see Note, 103 A. L. R. 817, dealing with subject of refund of taxes illegally assessed or collected.

We therefore hold that if an application is made for a refund under §503 of the Fiscal Code within the period of limitations fixed thereby and it appears that there was a tax paid to the Commonwealth to which the Commonwealth was not equitably or rightfully entitled, the provision for a refund or credit is mandatory. We disapprove the conclusion reached in the case of *Seidl's Appeal*, 143 Pa. Superior Ct. 539, 18 A. 2d 524, insofar as it construes the statute there involved as vesting an absolute discretion in the board to grant or refuse a refund or credit for taxes paid.[2]

We are here dealing with a refusal of a refund, but we should pause long enough to consider what the result would be if the board had complete discretion in granting refunds and some board embarked on an unrestrained course of returning taxes on the theory that they were not rightfully or equitably due. We should be required to condemn a delegation of authority so construed.

As we have heretofore pointed out, an administrative tribunal cannot be given an unlimited or arbitrary discretion, for to do so would result in a government of men instead of a government of laws. The legislature may grant tribunals a broad discretion in the application of standards, but these standards must be limited in scope

---

[1] "The Board of Supervisors may, if deemed advisable. . . ."

[2] The writer of this opinion, who was a member of the Superior Court when *Seidl's Appeal* was argued and who voted for reversal of the lower court, assumes full responsibility for his share in the error. The effect of Article III, Section 7, of our Constitution was not called to the attention of the Court.

by provisions in the statute or at least by the general purpose or object of the regulation.

This brings us to the subject of remedy which normally would be a matter for consideration at the outset. We have postponed discussion of that subject until now in order that the full import of the matter as applicable to this case might appear. The court below and the appellees relied strongly on our decision in *Short's Estate,* supra. While we said that since §503 provided that the action of the board "shall be final" and that therefore an appeal would not lie, it was added as a final basis for the decision that the board had not "abused its discretion" in refusing the petition. At the same time it has been suggested that *Short's Estate,* supra, was intended to hold that certiorari would not lie from this court to an administrative body exercising quasi judicial power.

· It is not necessary in this case to discuss the availability of the writ of certiorari to review the proceedings of a quasi judicial tribunal since that writ was not employed here.[3] We are concerned with the question as to whether such proceedings can be reviewed under an appropriate remedy and with the scope of such a review if allowed.

We recognize the full import of those decisions where it has been held that an appeal would not lie to the common pleas from tax assessments and settlements unless a statute authorized the appeal: *Clinton School District's Appeal,* 56 Pa. 315, 317; *Stewart v. Maple,* 70 Pa. 221, 223; *Hughes v. Kline,* 30 Pa. 227, 230, 231; *Moore v. Taylor,* 147 Pa. 481, 484, 23 A. 768; *Van Nort's Appeal,* 121 Pa. 118, 129, 15 A. 473; *Stratford v. Franklin Paper Mills Co.,* 257 Pa. 163, 165, 101 A. 349; *Phila. v. Phillips,* 65 Pa. Superior Ct. 578, 582, 583.

---

[3] See an exhaustive and learned discussion of the subject by Prof. F. Eugene Reader, Pennsylvania Bar Association Quarterly, June, 1939, p. 317.

Those were cases, however, where the administrative agency had the power to assess and levy a tax and it was the exercise of discretion under that power that was questioned. It also appeared in several of those cases that the party claiming to be aggrieved had failed to follow a specific statutory remedy provided by the act defining the powers of the administrative agency.

While the Board of Finance and Revenue is authorized to determine whether a tax or money has been paid to the Commonwealth to which it was not "rightfully or equitably entitled", or, more specifically, as here, may find whether a tax or money has been paid under an interpretation of law subsequently held to be erroneous by a court of final jurisdiction, if such facts are found in favor of the taxpayer the duty to order a refund or credit is mandatory. We know of no case where it has been held that the proper court in an appropriate proceeding may not require the performance of a statutory duty by an administrative agency. The cases are to the contrary, as we shall see.

Mandamus is an appropriate remedy under the circumstances present here. By the Act of June 8, 1893, P. L. 345, as finally amended by the Act of May 13, 1925, P. L. 664 (12 PS §1911), it is provided, inter alia, that "the court of common pleas of the county in which the seat of government is or may be located shall have the power, and it shall be required, to issue the writ of mandamus to all officers of the executive department of the Commonwealth . . . [except the Governor and the Secretary of Banking]" and to "all independent administrative boards or commissions of the State government and all departmental administrative boards or commissions of the State government." Although the writ is granted by the law side of the court, equitable principles largely govern its issuance and it will be granted only "where necessary to promote the ends of justice and where the prayer of the petitioner appeals to the conscience of the court." It is not necessary to enter into a

lengthy discussion of the nonavailability of the mandamus act where the duty to be enforced is purely discretionary. Here the writ is not employed in order to interfere with the exercise of a legal discretion by the board, but only to compel it to act according to law and within legal limitations, particularly those defining its jurisdiction. The appellant apparently thought that under the opinion in *Short's Estate,* supra, mandamus was the only available remedy. In fact, the paper books in that case will show that that argument was made. Here relief is sought upon the theory that the board has misconceived the extent of its powers and its duties.

If the facts set forth in the petition are found to be true, the commission is required to perform a purely ministerial act, to wit, to direct refund or a credit. There would therefore seem to be no question but that mandamus is the proper remedy. While the facts do not appear to be in dispute, the record must be returned in order that the defendants have an opportunity to make answer. If it then appears that the tax was paid as alleged in the petition, a peremptory writ should issue. "Judicial discretion should not be exercised to withhold the writ of mandamus to enforce a clear right conferred by statute, where no other remedy is available to secure such right, for the law and the right are imperative upon the court": 34 Amer. Juris., Mandamus, section 41. No statutory remedy was given by §503.

The writ will be used to compel but not to control the exercise of discretion. If a public utility commission refuses to entertain a petition for a certificate of public convenience, mandamus will lie to compel it to grant the applicant a hearing and to decide whether or not he should have it: *I. C. C. v. U. S.,* 224 U. S. 474, 32 S. Ct. 556. "If, however, such judgment or discretion is abused, or there is a mistaken view of the law as applied to the admitted facts of the case, the writ will issue to compel action according to law": *Johnson v. State Board of Veterinary Medical Examiners,* 46 Pa. Superior Ct. 279,

285. In *Kaine v. Com.*, 101 Pa. 490, mandamus was granted to compel school directors to admit a colored student to the main school building on the ground that although the directors had discretion in assigning the students to different schools, the discretion was limited to consideration of ability and attainments, and they could not distinguish on the basis of race or color.

In *Coyne v. Prichard*, 272 Pa. 424, 116 A. 315, where all the requirements of a building permit had been complied with, it was held to be the duty of the board to issue the permit and that discretion did not extend to a consideration of location. In *Com. ex rel. Shooster v. Devlin*, 305 Pa. 440, 158 A. 161, the writ issued to compel issuance of a new building permit because the ground for refusal was without any legal justification. In *Arthur v. Pittsburgh*, 330 Pa. 202, 198 A. 637, the court ordered plaintiff reinstated to the police force on the ground that the board had misinterpreted the statute. Also, see *Com. ex rel. v. Phila.*, 176 Pa. 588, 35 A. 195, and *Horowitz v. Beamish*, 323 Pa. 273, 185 A. 760. The Federal Supreme Court has granted relief by mandamus against the Interstate Commerce Commission in several cases where the commission refused relief because of the erroneous construction it put upon a statute: *I. C. C. v. U. S.*, supra; *U. S. v. I. C. C.*, 246 U. S. 638, 38 S. Ct. 408.

The Pennsylvania courts have regularly granted the writ where the interpretation of the statute was involved and an improper construction was found without ever referring to any theory that the tribunal's interpretation of the statute involved discretion. In *Grime et al. v. Dept. of Pub. Inst.*, 324 Pa. 371, 188 A. 337, we said (p. 376): "While it is true, as a general rule, that an administrative body may interpret the statute which confers upon it duties and functions, and its construction is persuasive upon the courts because it is the body entrusted with the execution of the statute, nevertheless such a body cannot enlarge or diminish its own jurisdiction under the statute by erroneous construction, and de-

terminations of this sort are always subject to judicial review." To this it may be added that an administrative body cannot violate a statutory mandate even though acting within the *general* jurisdiction conferred upon it by the statute.

Order reversed with a procedendo.