Brotherhood of Railroad Trainmen, Appellant, *v.* Walker.

Argued March 25, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Albert D. Brandon,* with him *Oliver, Brandon & Shearer,* for appellants.

*M. Louise Rutherford,* Deputy Attorney General, with her *Robert H. Maurer,* Assistant Deputy Attorney General and *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 25, 1954:

The General Safety Law of 1937 (Act of May 18, 1937, P. L. 654—43 PS 25-1 et seq.) directs the Department of Labor and Industry to promulgate regulations which will effectuate the object and purposes of the Act, Section 3 of which reads: "All establishments shall be adequately lighted, heated, and ventilated.

Proper *sanitary facilities* shall be provided in sufficient number for the persons employed, and *shall include toilet facilities, washing facilities, dressing rooms, retiring rooms for women, and wholesome drinking water of approved quality.*" (Emphasis supplied.)

Section 1 of the Act defines establishment: "The term 'establishment' shall mean any room, building or place within this Commonwealth where persons are employed or permitted to work for compensation of any kind to whomever payable, except farms or private dwellings, and shall include those owned or under the control of the Commonwealth, and any political subdivision thereof, as well as school districts."

The Department did issue regulations but in doing so it restricted the scope of the term "establishment" by declaring that it "shall apply only to a factory as hereinafter defined."

On June 27, 1950, the Brotherhood of Railroad Trainmen, Pennsylvania State Legislative Board of the Brotherhood of Railroad Trainmen, et al., brought an action of mandamus against the Secretary of the Department of Labor and Industry to compel him (1) to change the Department's definition of establishment so as to have it conform to the terminology of the Act, and thus include railroads as well as factories; (2) to require him to promulgate rules bringing railroad personnel within the purview of the Act; and (3) directing him to prosecute railroads and "responsible officers to secure safe sanitary conditions on the railroads of this Commonwealth."

The plaintiffs filed with the Complaint numerous exhibits consisting of photographs and letters depicting and describing "unsafe and unsanitary conditions existing on the railroads in the Commonwealth of Pennsylvania." If these exhibits represent physical fact in

stations, yards, rolling stock and other places where railroad employes are engaged in the performance of their daily duties, a situation emerges which clearly calls for governmental intervention of some kind. The railroads of today have made remarkable strides in providing comfort, cleanliness and convenience for passengers, but it would be mockery if those who work to assure that safety and sanitation for the travelling public should themselves be denied facilities now universally recognized as minimum American standards for protection of health.

The exhibits in this case bespeak conditions which beckon the carriers of pollution and invite the germs of disease. The Complaint avers that remonstrances have been made to the Department of Labor and Industry, conferences were had with the cabinet official heading that department, requests were made for opinions from the Department of Justice, inspectors were asked to take action, and the Governor was petitioned, but all to no avail.

The relief which the plaintiffs seek is one of grave moment, one that engaged the attention of the General Assembly and called forth legislation in behalf of the health of the people. Nothing can be more conducive to an enlightened civilization than an effective system of sanitation, drainage and lavtiation which cleanses, scours and purifies, driving contagion into the limbo of incineration and contamination into the distant reaches of the sea. The body of the modern State can not healthily survive unless it is vitalized with the arteries of sanitary plumbing. Soap and water are the most formidable enemies of pestilence and disease.

The lower court, however, did not consider the averments in the Complaint under discussion because the defendant filed preliminary objections, asserting,

inter alia, that the plaintiffs should have brought their action against the railroad companies and not the defendant; that the court has no power to substitute its discretion for that of the Secretary of Labor and Industry; that interstate railroads are not subject to State jurisdiction; that Section 2214 of The Administrative Code of 1929 (April 9, 1929, P. L. 177, 71 PS 574) constitutes a complete and adequate remedy at law; and that the plaintiffs should seek relief by interposing the "collective bargaining" rights guaranteed by the Railway Labor Act (Act of Congress of May 20, 1926, c. 347, 48 Stat. 1186, amended, 45 U.S.C.A. Section 151 et seq.)

The Court dismissed the Complaint but not through any of the doors suggested by the defendant. It selected one of its own by holding that if the plaintiffs have a remedy it must be obtained via a declaratory judgment under the Act of 1923, June 18, P.L. 840 (12 PS 831 et seq.) However, if Mandamus actually lies, it is not for the Court to order an alternative procedure. In the first place, it is not certain that declaratory judgment is available here. In *List's Estate*, 283 Pa. 255, we held that the Uniform Declaratory Judgments Act was not intended for, and should not be invoked in cases where the judgment sought can be had as expeditiously in the ordinary course of legal procedure as it can under the statute. This rule has been confirmed in a number of decisions.

In the second place, it is by no means apparent that in the armory of legal weapons, declaratory judgment is the arm which will bring to the plaintiffs what they seek, namely, revocation of illegal regulations and the promulgation by the defendant of regulations in keeping with the General Safety Act, as well as assurances that the defendant will affirmatively exercise the de-

cision required by law. We are satisfied that the plaintiffs were well advised in proceeding via the Rules of Civil Procedure governing Action of Mandamus (354 Pa. lxiii) rather than by declaratory judgment.

Defendant's counsel urged in the court below and here that by the Railway Labor Act of 1926, supra, Congress has preempted the field of interstate carriers and has assumed exclusive control over rates of pay and working conditions on interstate railroads, so that the State enactment is superseded and the Federal Act governs. Neither the Railway Labor Act, nor any other Federal statute, can deprive Pennsylvania of its sovereign police power exercised in behalf of the security of the Commonwealth and the health and welfare of its citizens. In the case of *Munn v. Illinois*, 94 U. S. 113, it was urged against the State of Illinois that one of its statutes, establishing rates of charges for storage of grain in warehouses, was invalid because it sought to regulate interstate commerce. The Supreme Court, in rejecting this contention, said that—" 'it is not everything that affects commerce that amounts to a regulation of it, within the meaning of the Constitution.' The warehouses of these plaintiffs in error are situated and their business carried on exclusively within the limits of the State of Illinois. They are used as instruments by those engaged in State as well as those engaged in inter-state commerce, but they are no more necessarily a part of commerce itself than the dray or the cart by which, but for them, grain would be transferred from one railroad station to another. Incidentally they may become connected with interstate commerce, but not necessarily so."

The more recent case of *Terminal Railroad Association of St. Louis vs. Brotherhood of Railroad Train-*

*men,* et al., 318 U. S. 1, is directly in point. There, for the protection of railroad switching crews who were compelled to ride (at risk of life and limb) the top and sides of the rear cars of trains, the Illinois Commerce Commission promulgated an order requiring railroads to provide cabooses on all designated runs within the confines of the State. The defendant contested the order, claiming that it encroached upon the exclusive powers of the Federal Government under the Interstate Commerce Act. Furthermore, that the involved employees could obtain relief under the same Railway Labor Act cited by the defendant in the case at bar. Addressing itself to this argument the Supreme Court, speaking through Mr. Justice JACKSON, said: ". . . we would hardly be expected to hold that the price of the federal effort to protect the peace and continuity of commerce has been to strike down state sanitary codes, health regulations, factory inspections, and safety provisions for industry and transportation . . . We hold that the enactment by Congress of the Railway Labor Act was not a preemption of the field of regulating working conditions themselves and did not preclude the State of Illinois from making the order in question." (p. 7.)

In effectuating the order of the Illinois Commerce Commission, cabooses attached to interstate trains were often carried into adjoining States because of the impracticability of cutting off the cabooses at the State lines. The defendant regarded this a direct invasion of the Interstate Commerce regulation by Congress, but Justice Jackson said that the State order "finds its origin in the local climactic conditions and in the hazards created by particular local physical structures, and it has rather obvious relation to the health and safety of local workmen." (p. 8.)

In point of state regulation over possible interstate traffic, the Illinois Commerce Commission order went much farther than does the Pennsylvania General Safety Act, so that there can be no doubt, under the authority of that case and others, that the Commonwealth of Pennsylvania can impose health regulations covering property and equipment of railroad companies even though some of that equipment may travel beyond the boundary lines of the Commonwealth. In fact, the lower court here conceded: "There is nothing in the Act which specifically excludes railroads, either intra or inter-state, from its purview. If they are to be excluded it must be for some reason dehors the Act."

Since there is nothing within or without the Act to exclude railroads from its operation, a duty manifestly fell upon the Secretary of Department of Labor and Industry to enforce its provisions against railroads. This duty the Department ignored and mandamus was the obvious tocsin to call him to the function assigned to him by the pronouncement of the General Assembly.

The lower court commented upon the rule that mandamus is discretionary with the court. Discretion, however, does not include capricious, captious or contrary refusal to enforce a statutory requirement. In *Hotel Casey Co. v. Ross*, 343 Pa. 573, we said: " 'Judicial discretion should not be exercised to withhold the writ of mandamus to enforce a clear right conferred by statute, where no other remedy is available to secure such right, for the law and the right are imperative upon the court' ". The learned court below was in error in holding: "Whether or not they [railroads] are to be excluded involves a construction of the Act and consideration of factors such as police

power of the State, interstate character of the railroads, federal legislation, constitutional limitations, and the like. These are not matters ordinarily decided in a mandamus proceeding, but they are inherent in the pleadings."

Whether or not the exclusion of railroads was proper was a matter of defense at the trial of the cause on issue joined, since the statute did not exclude railroads and for the further reason that the interpretation by the Department of Labor and Industry was open to attack. "The Pennsylvania courts have regularly granted the writ [of mandamus] where the interpretation of the statute was involved and an improper construction was found without ever referring to any theory that the tribunal's interpretation of the statute involved discretion." (Hotel Casey v. Ross, supra, p. 584).

In the case of *Johnson v. State Board of Veterinary Medical Examiners*, 46 Pa. Superior Ct. 279, the Superior Court said: "If, however, such judgment or discretion [of a public official] is abused, or there is a mistaken view of the law as applied to the admitted facts of the case, the writ will issue to compel action according to law."

In *Hotel Casey Co. v. Ross*, supra, p. 585, we affirmed the principle here under discussion with the statement that "an administrative body cannot violate a statutory mandate even though acting within the general jurisdiction conferred upon it by the statute."

Since the only issue before the lower court was whether the Complaint sufficiently set forth a cause of action in Mandamus, and since the Complaint alleged a breach of mandatory duty imposed by statute which on its face applies to railroads as well as fac-

tories, there was error in sustaining the preliminary objections.

Order reversed with a procedendo.