**Robert E. BELCHER, Petitioner,**

v.

**STATE HARNESS RACING COMMISSION,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1999.

Decided April 14, 1999.

Matthew L. Kurzweg, Pittsburgh, for petitioner.

David C. Kennedy, Harrisburg, for respondent.

Before COLINS, President Judge, and McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

FRIEDMAN, Judge.

Robert E. Belcher (Belcher) appeals from an order of the State Harness Racing Commission (Commission) reversing the denial of Belcher's application for a license under section 213(d)(4) of the Race Horse Industry Reform Act (Act)[1] but, instead of granting a license to Belcher, merely declaring that Belcher is eligible to re-apply to the Commission for licensure.

Belcher, a resident of Ohio, applied for an owner/trainer license from the Commission on February 3, 1998. At the time, Belcher

---

1.  Act of December 17, 1981, P.L. 435, *as amend-*     *ed,* 4 P.S. § 325.213(d)(4).

was licensed in Ohio. On his application, Belcher admitted to several instances where he had been fined and/or suspended in the past.[2] (Findings of Fact, Nos. 1–4.)

William Speakman (Speakman), the Commission's Director for Licensing, investigated Belcher's application and found that "milkshaking" charges had been brought against Belcher in Ohio.[3] Speakman reported this information to Richard Sharbaugh (Sharbaugh), the Commission's Executive Secretary, and recommended to Sharbaugh that the Commission deny Belcher's application for a license. On February 10, 1998, Sharbaugh denied Belcher's application under section 213(d)(4) of the Act[4] based on the information from Ohio. (Findings of Fact, Nos. 5–11.)

On February 17, 1998, Belcher appealed from the denial and requested a hearing. The hearing was held on May 19, 1998 before a hearing examiner.[5] (See Adjudication; R.R. at D.)

At the hearing, Belcher introduced a document entitled "Settlement Agreement." (Findings of Fact, No. 12.) The document specifically indicated that: "The Commission (Ohio) makes no finding regarding the alledged [sic] impropriaties [sic] (milkshaking) by Mr. Belcher." (Findings of Fact, No. 13.) Thus, Belcher was *not* found guilty of milkshaking, and Belcher was never actually suspended in Ohio. (Findings of Fact, Nos. 14, 16.)

Based on this evidence, the hearing examiner concluded that Sharbaugh improperly denied Belcher's license application. (Conclusions of Law, No. 7.) The hearing examiner recommended that the Commission reverse Sharbaugh's decision and either issue a license to Belcher *or* allow Belcher to re-apply for a license. (See Adjudication.) On June 22, 1998, the Commission issued an order reversing the denial of Belcher's license application and declaring that Belcher could re-apply for licensure.

■ On appeal to this court,[6] Belcher argues that the Commission erred by merely declaring that Belcher was eligible to re-apply for a license after reversing the denial of his February 3, 1998 license application. We agree.[7]

■ The Commission specifically denied Belcher's application under section 213(d)(4) of the Act, 4 P.S. § 325.213(d)(4). This section states that the Commission may refuse to issue a license to an applicant if the Commission finds that the applicant "[h]as been found guilty of any violation or attempt to violate any law, rule or regulation of racing in any jurisdiction, for which suspension from racing might be imposed in that jurisdiction." Here, the Commission found that Belcher had *not* been found guilty of milkshaking and that Belcher had *never* been suspended from racing.

■ The Commission had no other reason to deny Belcher's license application. Al-

2. Belcher reported that he was fined $25.00 in Pennsylvania in 1989, but that he was unaware of the fine because he moved to Ohio shortly after it was imposed. Pennsylvania suspended Belcher when he did not pay the fine. However, as soon as Belcher learned about the fine in July 1996, he paid it. (R.R. at B.)

Belcher also reported that he was fined in Ohio in 1996 and that he was accused of violating two of Ohio's Rules of Racing in 1997. Belcher indicated that the 1997 charges were on appeal. (R.R. at B.)

3. "Milkshaking" is giving the horse a mixture of sodium bicarbonate, which allegedly delays the onset of lactic acid in the horse, to enhance the horse's performance. (N.T. at 32.)

4. This section states that the Commission may refuse to issue a license to an applicant if the Commission finds that the applicant "[h]as been found guilty of any violation or attempt to violate

any law, rule or regulation of racing in any jurisdiction, for which suspension from racing might be imposed in that jurisdiction." 4 P.S. § 325.213(d)(4).

5. Section 226 of the Act, 4 P.S. § 325.226, states that the Commission may refer a matter to one or more of its officers for hearing.

6. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Boyce v. State Horse Racing Commission*, 651 A.2d 656 (Pa.Cmwlth. 1994).

7. We note that, during oral argument before this court, counsel for the Commission agreed that Belcher's license application should have been granted.

though the Commission may refuse to issue a license on other grounds, none of them apply here.[8] In addition, section 213(c) of the Act, 4 P.S. § 325.213(c), provides that the Commission shall[9] grant a license if it finds the applicant's "experience, character and general fitness" to be consistent with the public interest and the best interests of horse racing. Here, the Commission denied Belcher's application based solely on section 213(d)(4) of the Act. Therefore, the Commission found no problem with Belcher's "experience, character and general fitness" for a license.

Because the Commission had no reason to deny Belcher's license application under any of the provisions of section 213(d) of the Act and because the Commission found no problem with Belcher's general fitness for a license under section 213(c) of the Act, the Commission had a statutory obligation to issue Belcher an owner/trainer license.

Requiring Belcher to re-apply for a license was no remedy at all for the improper denial of his license application. The Commission's disposition of the matter did not give Belcher a license with which he could earn a living in Pennsylvania. Moreover, upon re-application, the Commission could revisit Belcher's "character and general fitness" for a license and could once again deny Belcher a license for spurious reasons. Thus, we hold that the Commission has *one* opportunity to investigate a license application and, if it is denied, *one* opportunity to present *all* reasons for denial of the application.[10]

We also note that, in ordering Belcher to re-apply for licensure, the Commission would deprive Belcher of the presumption of worthiness to which he would be entitled if he were a licensee. Licenses are issued for three-year terms and are automatically renewed unless the Commission finds that the licensee has violated certain provisions of the Act. *See* section 213(a) of the Act, 4 P.S. § 325.213(a).

Accordingly, we reverse that portion of the Commission's order requiring Belcher to re-apply for licensure, and we order the Commission to issue an owner/trainer license to Belcher. The license shall be retroactive to the date of the Commission's order of June 28, 1998.

## ORDER

AND NOW, this 14th day of April, 1999, the order of the State Harness Racing Commission (Commission), dated June 28, 1998, is reversed to the extent that it requires Robert E. Belcher (Belcher) to re-apply for licensure. It is further ordered that the Commission shall issue an owner/trainer license to Belcher within seven (7) days of the filing of this order. The license shall be retroactive to the date of the Commission's order of June 28, 1998.

8. Section 213(d) of the Act, 4 P.S. § 325.213(d), states that the Commission may refuse to issue a license if it finds that the applicant: (1) has been convicted of a crime involving moral turpitude; (2) has engaged in bookmaking or another form of illegal gambling; (3) has been found guilty of any fraud or misrepresentation in connection with racing or breeding; (4) has been found guilty of a rule of racing in any jurisdiction, for which suspension from racing might be imposed in that jurisdiction; or (5) has violated any rule, regulation or order of the Commission.
   Section 213(d.1) of the Act, 4 P.S. § 325.213(d.1), states that the Commission shall refuse to issue a license if it finds that the applicant has been convicted of an offense relating to fixing races and that the conviction has not been overturned on appeal.

9. Section 213(c) of the Act actually states that the Commission "may" grant a license if it finds the applicant's "experience, character and general

fitness" for a license to be satisfactory. However, where, as here, a statute gives power to public officials and individual rights call for the exercise of that power, the word "may" means the same thing as the word "shall." *Hotel Casey Co. v. Ross*, 343 Pa. 573, 23 A.2d 737 (1942). Moreover, the exercise of such statutory power by public officials is a "remedy to those...who would otherwise be remediless." *Id.* at 579, 23 A.2d at 740.

10. If, after issuing a license, the Commission finds that a licensee "has been guilty of any violation or attempt to violate any law, rule or regulation of any racing jurisdiction for which suspension from racing might be imposed in that jurisdiction," the Commission has the authority under section 213(f)(1)(iv) of the Act, 4 P.S. § 325.213(f)(1)(iv), to *revoke* the license.