Timothy BOYCE, Petitioner,

v.

STATE HORSE RACING COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 22, 1994.

Decided Dec. 13, 1994.

Alan Pincus, for petitioner.

Jorge M. Augusto, Asst. Counsel, for respondent.

William H.R. Casey, for intervenor.

Before COLINS, President Judge, FRIEDMAN, J., and KELTON, Senior Judge.

COLINS, President Judge.

Timothy Boyce (Boyce) petitions for review of the November 17, 1993 order of the Pennsylvania State Horse Racing Commission (Commission) affirming his ejection on October 29, 1993 from the Philadelphia Park Race Track (Philadelphia Park) by the Bensalem Racing Association (Association).

Boyce, a 37–year old licensed exercise rider and former jockey, lived and worked at Philadelphia Park, where he was employed by a local trainer. The facts set forth in the Commission's adjudication indicate that in September 1993, a package shipped by T.T. Distributors, Inc. of Ocala, Florida, (shipper), was mistakenly delivered by United Parcel Service (UPS) to an individual (hereinafter referred to as recipient) also named Timothy Boyce (with no relationship to petitioner Boyce) who resided at 888 Roberts Road, Bensalem, Pennsylvania, 19020. The package contained four electrical devices (a/k/a "machines" used to prod or shock horses into accelerating their speed), electrical batteries, and a packing slip that read "for vitamins," for a cost of $228.00. The adjudication notes that use of any electrical, mechanical, or other device, exclusive of an ordinary whip not over 30 inches long on a horse in a race or workout, is not permitted as it can alter the outcome of a race, and that anyone violating this restriction "shall be ruled off by the Commission."

According to the facts of record, the recipient gave notice of the package to the Bensalem Police Department (Bensalem Police) who, in turn, notified a Philadelphia Park security officer, Detective Lance T. Morell (Morell). Realizing that there was a "Timothy Boyce" employed by and living at Philadelphia Park, Morell and other security personnel, with Boyce's consent, conducted a search of Boyce's living quarters and automobile, where they found one AAA electrical battery, a business card from the shipper of the package, a receipt for Boyce's purchase of a U.S. postal money order in the amount of $228.00 made payable to the shipper, and certified mail return receipts verifying proof of delivery to the shipper. The addressee on the package was Timothy Boyce, P.O. Box 1174, Bensalem, Pennsylvania. This post office box, although occasionally used by petitioner Boyce, was actually registered to an individual named Herbert R. Figgins, also known as "Pugsley," another employee licensed by the Commission working at Philadelphia Park.

During Boyce's interrogation by Philadelphia Park security personnel (later transcribed into a written statement that Boyce voluntarily signed), Boyce first admitted ordering "vitamins, ... horse stuff and equipment" from the shipper, but later stated he had not ordered vitamins but instead had ordered four machines, at a cost of $55.00 each, and for which he had mailed a $228.00 money order to the shipper. Boyce also told security personnel that he never intended to sell the machines for profit, but had bought them for immediate delivery to people who ran an "unapproved" Delaware farm, to help "move animals and stuff around" and to "break babies on the farm." The record indicates that Boyce either could not or would not provide investigators with the names or addresses of the foregoing intended recipients of the machines. At the conclusion of Philadelphia Park's investigation, Boyce received a notice of ejection from the Association, advising him that, pursuant to 58 Pa.Code § 163.301, 58 Pa.Code § 163.471, and 58 Pa.Code § 165.1(b), his "presence on the grounds of Philadelphia Park" was "deemed to be detrimental to and inconsistent with the best interest of horse racing and the public" for having "violated or at-

tempted to violate the letter and the spirit of the Rules of Racing and the Administrative Rules of the Commission."

In accordance with Boyce's right to appeal this ejection, a hearing was held on November 5, 1993 before the Commission's hearing examiner. Boyce gave testimony, consistent with his statement to Philadelphia Park security personnel, that his intention after picking up the machines at the post office was to "immediately take them to his friend in Delaware," not onto the grounds of Philadelphia Park, and that he knew only the first names of the intended recipients of the machines. The hearing examiner concluded that Boyce's failure to provide more detailed information regarding the alleged recipients of the machines and Boyce's overall evasiveness created a reasonable inference on the part of the Association that the machines would ultimately appear on Philadelphia Park premises. Such a result, as found by the hearing examiner, would be "detrimental to the best interests of horse racing" and constitutes a sufficient basis on which to eject Boyce from the race track grounds, pursuant to Section 215(c) of the Race Horse Industry Reform Act (Act).[1] *Bensalem Racing Association v. State Horse Racing Commission* and *Penn National Turf Club, Inc. v. State Horse Racing Commission,* 165 Pa.Commonwealth Ct. 647, 645 A.2d 933 (1994).

The issue for this Court's determination is whether the requisite burden of proof was met to support the Commission's decision that Boyce's ejection from the race track grounds was warranted. "Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law was committed or necessary findings of fact are supported by substantial evidence." *Neifert v. State Horse Racing Commission,* 130 Pa.Commonwealth Ct. 222, 225, 567 A.2d 789, 791 (1989).

Boyce argues that the Commission's adjudication was arbitrary, capricious, unreasonable, and unsupported by substantial evi-

dence. Specifically, he contends that no actual evidence was submitted that would establish his alleged intent to bring the prohibited devices onto Philadelphia Park premises and that it was error to base his ejection solely on mere inference, thereby barring him from earning a living at any race track. Additionally, Boyce avers that prior to the present situation, he had never been the subject of any investigation and had no history, throughout his 15–year career in racing activities, of violating race track regulations.

■ In reviewing the Commission's decision to eject a licensed employee from the race track, we note that the Commission does not require that "allegations of impropriety be *proven* but [only] that the track's determination be *reasonable,*" that is, based upon a "reasoned determination" that the employee's presence there would be "detrimental" to the public perception of horse racing as a sport. *Kulick v. Pennsylvania State Horse Racing Commission,* 115 Pa.Commonwealth Ct. 408, 412, 540 A.2d 620, 622, *petition for allowance of appeal denied,* 520 Pa. 620, 554 A.2d 512 (1988). As to the precise conduct warranting such a determination, this Court in *Kulick* further clarified that

> [s]uch proscribed conduct 'need not be criminal in nature nor proved beyond a reasonable doubt. It is sufficient that the complained-of conduct and its attending circumstances be such as to reflect negatively on the sport.' *Id.* [*Dale v. Pennsylvania State Horse Races Comm.,* 38 Pa. Cmwlth. 77] at 81, 391 A.2d [1134] at 1134 [ (1978) ] (citation omitted). The Commission's articulation of the burden of proof as entailing a demonstration only of the *appearance* of impropriety thus embodies the purpose of the Act. Such appearances indeed do reflect negatively on the sport and impair the public's perception of its integrity.

*Id.* at 414, 540 A.2d at 623. As we consider the actions of Boyce, a licensed exercise rider employed by Philadelphia Park, within the

---

1. Act of December 17, 1981, P.L. 435, *as amended,* 4 P.S. § 325.215(c), provides:

A licensed corporation may refuse admission to and eject from the enclosure of the race track operated by the corporation, any person

licensed by the commissions under section 213, employed at his occupation at the race track, whose presence there is deemed detrimental to the best interests of horse racing, citing the reasons for that determination....

context of *Kulick,* it is reasonable to conclude that his mere ordering of the mechanical devices without providing satisfactory explanation thereof to authorities, would "make at least some members of the public believe that the outcome of races is the product of influences beyond the talent, ability and good fortune of the participants," and "erodes the public confidence in the industry...." *Smith v. Pennsylvania State Horse Racing Commission,* 517 Pa. 233, 239, 535 A.2d 596, 599 (1988). Substantial evidence of record indicating the many inconsistencies in Boyce's statements supports this conclusion as, for example, the following respective testimony of Officer Morell and Boyce elicited during the November 5, 1993 hearing:

[Direct Examination: Officer Morell]

Q. Now, Detective Morell, as you know, the ejection is based on the statement that his [Boyce's] continued presence would be detrimental to the best interests of horse racing and particularly Philadelphia Park. Did you concur in that determination?

A. Yes, I did.

Q. And what is the reason for your concurrence?

A. During questioning and interviewing, instead of helping me draw a concise conclusion as to his intent with the batteries,[2] it [Boyce's responses] was broadening and elusive. He didn't give me anything that I could check out. He didn't give me someone down in Delaware where I could call them and say, 'Was this person to deliver electrical devices to you?'

. . . .

It was the fact that ... everybody was so elusive as far as anyone that had direct knowledge pertaining to the box being delivered, ... that opened this whole investigation.

Q. If that hadn't happened, would it have been an easy matter for this Mr. Boyce to bring these batteries onto the track premises?

A. We would have had no knowledge.

. . . .

[Cross–Examination: petitioner Boyce]

Q. When you were first called in did you deny ordering the batteries?

A. At first I denied it.

Q. And then subsequently, you did admit that you had ordered them?

A. Yes, sir.

Q. And did you attempt to go to the post office to claim them?

A. Yes, sir.

. . . .

Q. In fact, the statement which you signed says that you were going to send them to some friends at a farm in Delaware ... correct?

A. Yes, sir.

Q. And today you're telling us about Cow Town in New Jersey where barrel horses ride—that that's what they were for?

A. Yes, sir.

Q. It's a different version.

A. Yes, sir.

Q. You got rid of everything that would explain the legitimate purpose for these batteries, right?

A. Yes, sir.

 It is well-established that in cases such as this, questions of evidentiary weight and resolution of evidentiary conflicts are for the Commission, not the reviewing court. *Frizalone v. Pennsylvania State Harness Racing Commission,* 112 Pa.Commonwealth Ct. 285, 535 A.2d 288 (1987). Clearly, after hearing Boyce's vacillating testimony, the

**2.** In racing parlance, it is customary to refer to electrical devices or machines used to prod horses as "batteries." See the following relevant direct testimony of Robert Stahl, Resident Agent of the Thoroughbred Racing Protective Bureau at Philadelphia Park, during the November 5, 1994 hearing:

Some horses are trained with these during training hours in the morning or maybe a day or two prior to the race, and it is the belief of many riders and many trainers that the *electrical device or battery, as we call it,* actually stimulates a horse into running a lot faster. (Emphasis added.)

Commission was reasonable in making a credibility determination against Boyce.

Finally, we reject Boyce's contention that his ejection from Philadelphia Park precludes his working anywhere else in the state, because the present matter involves an ejection, not a revocation of Boyce's license as an exercise rider.

The order of the Commission is affirmed.

### ORDER

AND NOW, this 13th day of December, 1994, the order of the Pennsylvania State Horse Racing Commission in the above-captioned matter is affirmed.