# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Racing GAMbit, LLC,                     :
                          Petitioner     :
                                       :
            v.                     :     No. 415 C.D. 2017
                                         :     Argued:  March 6, 2018
State Horse Racing Commission,         :
                         Respondent     :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE P. KEVIN BROBSON, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION BY JUDGE BROBSON**　　　　**FILED:  April 9, 2018**

Racing GAMbit, LLC (Petitioner) petitions for review of an adjudication and order of the Commonwealth of Pennsylvania, Department of Agriculture, State Horse Racing Commission (Commission), dated February 28, 2017, which reversed a Board of Stewards (Stewards) decision to not disqualify Petitioner's horse, Cousin Stephen, from the fifth race at Philadelphia PARX (PARX) on September 25, 2016.  For the reasons discussed below, we reverse.

On August 31, 2016, Petitioner acquired Cousin Stephen in a claiming race[1] at Saratoga Race Course in New York.  Pursuant to a New York Gaming Commission regulation, a claimed horse "shall not race outside New York State for

---

[1] A "claiming race" is one in which all the horses entered to race are for sale at a predetermined price, and a prospective owner may "claim" a horse prior to the race, effectuating the transfer of ownership to the new owner before the race begins.  *See* 58 Pa. Code §§ 161.3, 163.251-.272.

a period of 30 days from the date of the claim or the end of the meeting at which it was claimed, whichever period of time is longer." N.Y. Comp. Codes R. & Regs. tit. 9, § 4038.4. When such a restriction applies to a horse, the horse is referred to as being "in jail." (Reproduced Record (R.R.) at 41a.) The meeting at Saratoga ended on September 4, 2016, thereby placing Cousin Stephen in jail until October 4, 2016.

Petitioner entered Cousin Stephen in the September 25, 2016 race at PARX. The official PARX race program listed the August 31, 2016 claiming race as Cousin Stephen's last race. (*Id.* at 67a.) Cousin Stephen ran in the race and finished first. (*Id.* at 40a.) Richie's Rich, a horse owned by Martin Shaw (Shaw), finished second. (*Id.*) The Stewards received no protests or challenges to Cousin Stephen's eligibility prior to making the results of the race official. (*Id.* at 40a-41a.)

On October 6, 2016, Shaw contacted Jonathan S. Gerweck (Gerweck), Chief Steward at PARX. (*Id.* at 40a.) Shaw questioned Cousin Stephen's eligibility to run in the race, contending that the Stewards should have disqualified Cousin Stephen due to being in jail. (*Id.*) Gerweck informed Shaw that the Stewards did not disqualify Cousin Stephen because they had not received a timely protest of his eligibility. (*Id.* at 41a.)

On October 11, 2016, Shaw appealed the Stewards' decision to the Commission. (*Id.* at 7a-8a, 47a, 95a.) On October 12, 2016, the Commission granted the appeal and further granted a supersedeas on the race results. (*Id.* at 11a.) By notice dated November 14, 2016, the Commission informed Robert Reid (Reid), Petitioner's horse trainer, of an upcoming hearing on the matter.[2] (*Id.* at 17a.) This notice instructed Reid to inform Petitioner of the hearing. (*Id.*) The Commission

---

[2] The record does not establish any service upon Petitioner.

2

held the hearing on December 8, 2016. Neither Reid nor Petitioner attended. Shaw and Gerweck testified as the only witnesses.

Gerweck testified that Shaw called him over a week after the conclusion of the race and asked why the Stewards did not disqualify Cousin Stephen. (*Id.* at 40a.) Gerweck informed Shaw that the Stewards did not disqualify Cousin Stephen because they did not receive a timely protest, as required by 58 Pa. Code § 163.281(c).[3] (*Id.* at 41a, 95a.)

Shaw testified that he did not learn of Cousin Stephen's ineligibility until over a week after the race. (*Id.* at 50a.) Upon learning this information, Shaw called the New York Gaming Commission to confirm. (*Id.*) The New York Gaming Commission confirmed to Shaw that it fined Reid for entering an ineligible horse. (*Id.*) In support of this fact, Shaw entered into evidence a printout of the New York Gaming Commission's ruling, wherein it fined Reid "for having run horse Cousin Stephen at P[ARX] Racetrack on September 25, 2016." (*Id.* at 10a.) Shaw opined that the racing office should have prevented Cousin Stephen from entering the race as ineligible. (*Id.* at 54a.)

By adjudication and order dated February 28, 2017, the Commission granted Shaw's appeal and disqualified Cousin Stephen from the race. (*Id.* at 104a.) The Commission further ordered the winnings to be redistributed according to the revised order of finish. (*Id.*) The Commission found that Cousin Stephen's "in jail" status rendered the horse ineligible to compete in the race. (*Id.* at 94a.) Accordingly,

---

[3] 58 Pa. Code § 163.281(c) provides:

> A protest regarding qualifications, entries, weight or other conditions of a race shall be made in writing, signed by the complainant and be filed with the stewards at least 60 minutes before the scheduled post time of the race in question. *A protest not timely made may be disallowed for that reason alone.*

(Emphasis added.)

the Commission concluded that Cousin Stephen's running in the race violated 58 Pa. Code § 163.108, which requires that a horse shall be eligible at the time of the race in order to compete. (*Id.* at 96a.)

The Commission conceded that Shaw did not file a timely protest of Cousin Stephen's eligibility. (*Id.* at 95a.) Notwithstanding Shaw's lack of a timely protest, the Commission nonetheless concluded that it must disqualify Cousin Stephen pursuant to 58 Pa. Code § 161.1, which imposes a duty to "prevent circumvention or evasion of the Commission's rules and regulations." (*Id.* at 97a.)

In support of its conclusion, the Commission discussed a 2015 Commission adjudication, *Romar, LLC v. State Horse Racing Commission* (*Romar*), Docket No. HORSE-2014-11 (issued May 26, 2015). In *Romar*, the stewards received an untimely verbal protest regarding the eligibility of Romar's horse, Wardelle. (*Id.* at 112a, 123a.) The protest challenged Wardelle's eligibility to run in the race. (*Id.* at 125a.) The stewards denied the protest as untimely, but proceeded to conduct an independent investigation into the matter. (*Id.* at 126a.) The stewards ultimately declared Wardelle ineligible due to being in jail. (*Id.* at 122a.) Accordingly, the stewards issued a formal ruling disqualifying Wardelle. (*Id.*) Romar timely appealed the ruling to the Commission. (*Id.* at 119a.) The Commission affirmed the stewards' ruling, concluding that the stewards did not exceed their authority in investigating Wardelle's eligibility and disqualifying the horse based upon the results of that investigation. (*Id.* at 126a-27a.) In so doing, the Commission noted the untimeliness of the protest but ultimately determined that the stewards' power under 58 Pa. Code § 165.201[4] imposed an obligation to investigate

---

[4] 58 Pa. Code § 165.201 provides:

the allegation of ineligibility. (*Id.* at 125a-26a.) The Commission noted that its duty of maintaining the integrity of horse racing involved a duty to correct errors where they may occur, regardless of what triggered the investigation of the error. (*Id.*)

Here, the Commission found *Romar* to be analogous. Although the Commission noted that the Stewards did not abuse their discretion in refusing to disqualify Cousin Stephen, it opined that administrative agencies have an obligation to render consistent opinions. (*Id.* at 116a.) The Commission determined that, pursuant to precedent established in *Romar*, "the most important thing . . . is for the [s]tewards to remediate any error in order to maintain the integrity of [horse] racing." (*Id.*) Accordingly, the Commission disqualified Cousin Stephen from the race. Petitioner then petitioned this Court for review.

On appeal,[5] Petitioner alleges multiple errors of law and abuses of discretion by the Commission. Specifically, Petitioner argues: (1) the Commission abused its discretion by granting an untimely appeal; (2) the Commission abused its discretion by misapplying *Romar*; (3) the Commission violated Petitioner's due process rights by failing to provide notice; (4) the Commission erred by relying on

> The Stewards shall have the power to resolve matters before them including those which are not expressly covered by this chapter. In all cases, the Stewards shall render an opinion in accordance with the generally accepted customs and usages of racing in conformity with equitable standards of justice.

[5] This Court will only disturb an order of the Commission where constitutional rights have been violated, where an error of law has been committed, or where necessary findings of fact are not supported by substantial evidence. *Boyce v. State Horse Racing Comm'n*, 651 A.2d 656, 658 (Pa. Cmwlth. 1994). Further, a reviewing court must give considerable weight and deference to an agency's interpretation of its own regulations. *Rubino v. Pa. Gaming Control Bd.*, 1 A.3d 976, 980 (Pa. Cmwlth. 2010), *appeal denied*, 16 A.3d 504 (Pa. 2011). As such, an agency interpretation of its regulation is controlling unless clearly erroneous, inconsistent with the regulation or statute, or unreasonable. *Id.*

improper hearsay evidence at the hearing; and (5) the Commission's order is invalid due to untimeliness and a lack of necessary signatures.

Petitioner, citing 58 Pa. Code § 163.481(b), first argues that the Commission abused its discretion in granting an untimely appeal. The entirety of 58 Pa. Code § 163.481, relating to review and appeals of decisions, provides:

> (a) The Commission may investigate and review a decision or ruling of the stewards or other racing official, upon its own motion or upon the written request of an aggrieved party. In the latter case, the appeal from the decision or ruling of the stewards or racing official shall be made in writing within 10 days from the oral or written notice of the decision or ruling, whichever first occurs. The appeal shall be sworn to before a notary public or one of the stewards of the meeting, and shall set forth briefly the alleged offense and penalty imposed and the reasons believed by the appellant to warrant a review of the decision by the Commission. Hearings on the appeals shall be in accordance with the hearing procedures set forth in Chapter 165 (relating to administrative rules).
>
> (b) An appeal of a decision involving entries, qualifications, weights, conditions or the time or length of a race or the running thereof or an [sic] other decision arising under § 163.281 (relating to objections or protests) shall be made by filing a written appeal therefrom prepared in the manner prescribed in § 165.213 (relating to notice of penalty) and filed and received by the Commission no later than 48 hours after time of closing of entries for the race.

58 Pa. Code § 163.481.

Petitioner argues that the decision not to disqualify Cousin Stephen implicates entries and qualifications of the race, thereby triggering subsection (b). Petitioner, therefore, contends that Shaw failed to file a timely appeal, because he did not file the appeal within 48 hours after the closing time of entries for the race. In retort, the Commission asserts that 58 Pa. Code § 163.481(a) governs the appeal.

6

In so arguing, the Commission classifies Shaw's appeal as an appeal of an oral ruling denying a protest, thereby implicating subsection (a) and giving Shaw 10 days from the Stewards' decision in which to file an appeal.

As noted above, the Commission's regulation identifies two different time periods for filing appeals. Subsection (a) of the regulation is the more broadly-worded subsection of the two and provides, in part, that "[t]he Commission may . . . review a decision or ruling of the stewards . . . upon the written request of an aggrieved party . . . within 10 days from the oral or written notice of the decision or ruling, whichever first occurs." 58 Pa. Code § 163.481(a). Subsection (a) places no limit on the type of appeal, except to the extent that it must be an appeal from "a decision or ruling of the stewards or other racing official." *Id.* Furthermore, the time period for filing under subsection (a) begins to run from the notice of the decision or ruling. Subsection (b), by contrast, is limited in that it pertains to "[a]n appeal of a *decision involving entries, qualifications,* weights, conditions or the time or length of a race or the running thereof or an [sic] other decision arising under 58 Pa. Code § 163.281 (relating to objections and protests)." 58 Pa. Code § 163.481(b) (emphasis added). The time period for the filing of an appeal under subsection (b) does not run from the notice of a decision; rather, it begins to run from the "time of closing of entries for the race." *Id.*

While at first glance it may appear that subsection (b) is the controlling provision because it relates, in part, to "[a]n appeal of a decision involving entries [or] qualifications," the Commission's interpretation that the requirements of 58 Pa. Code §§ 163.281 and 163.481(b) are inapplicable to this matter is reasonable. The Commission points out that this case is not about an appeal of an entry of a horse in a race as contemplated by 58 Pa. Code § 163.281, which directs a protest to be filed

7

with the stewards not later than 60 minutes before the scheduled post time. The Commission contends that because there was no protest to an entry filed pursuant to 58 Pa. Code § 163.281, there could not have been an appeal of a decision regarding that protest or objection in the 48 hours after the close of the entries.

Here, Petitioner did not learn of Cousin Stephen's alleged in jail status and resulting ineligibility until well after the close of the appeal period under 58 Pa. Code § 163.481(b). As a result, Petitioner did not inform the Stewards and receive a decision about Cousin Stephen's alleged ineligibility until after the close of that appeal period. Although one could reason that the failure to protest earlier caused the appeal of the denial of the protest to be untimely, the regulations allow for the possibility of a late protest, as 58 Pa. Code § 163.281(c) provides, in part, that "[a] protest not timely made *may* be disallowed for that reason alone." Thus, the language of 58 Pa. Code § 163.281(c) implies that untimely protests may be allowed. If untimely protests are allowable, then there must be a period in which to appeal the denial or granting of an untimely protest. Thus, application of 58 Pa. Code § 163.481(b) in this situation would be absurd, because it would set the appeal deadline before the protest was even made. Subsection (a) provides a reasonable appeal period in these circumstances. Thus, Shaw's appeal of the Steward's decision not to disqualify Cousin Stephen because they had not received a timely protest of his ineligibility was itself timely under 58 Pa. Code § 163.481(a).

Petitioner next argues that the Commission abused its discretion in applying its previous decision in *Romar* to Shaw's appeal. Specifically, Petitioner argues that *Romar* is distinguishable, and the Commission misapplied the holding to the instant case.

8

At its core, *Romar* dealt with the Commission's review of the stewards' exercise of discretion. The steward in *Romar* denied an untimely protest to a horse's eligibility. (R.R. at 123a.) Stewards are vested with the discretionary authority to deny protests for untimeliness alone. 58 Pa. Code § 163.281(c). Thereafter, the stewards performed an independent investigation, and, upon discovering the ineligibility of the horse in question, disqualified the horse. (R.R. at 126a.) On appeal, the Commission framed the issue as "whether the [s]tewards having conducted an independent review/investigation were *authorized*, compelled and/or required to address an 'eligibility' issue and to correct an error." (*Id.* at 124a (emphasis added).) Essentially, the issue in *Romar* boiled down to whether the stewards acted properly within their discretion in disqualifying the horse. The Commission determined that the stewards did not exceed their discretionary authority, citing the stewards' general power under 58 Pa. Code § 165.201 to resolve matters before them. (*Id.* at 127a.)

The Commission in the instant case, however, went beyond this basic inquiry of whether the Stewards exceeded their authority. Instead of following *Romar* and analyzing whether the Stewards acted within their discretionary authority in making a decision regarding disqualification, the Commission went a step further and evaluated the merits of the appeal. The Commission's adjudication provides that the "Stewards . . . were acting within their discretion when they refused to disqualify 'Cousin Stephen.'" (*Id.* at 115a.) Nonetheless, the Commission went beyond this conclusion and evaluated the merits of Cousin Stephen's eligibility. In so doing, the Commission stated "the most important thing in such a case is for the Stewards to remediate any error in order to maintain the integrity of racing." (*Id.* at 116a.)

9

Upon determining that the Stewards properly exercised their discretion in declining to disqualify Cousin Stephen, the Commission should have ended its inquiry. The Commission's regulations make clear that (1) stewards are vested with the authority and discretion to handle matters in front of them, 58 Pa. Code § 165.201, and (2) stewards may disallow an untimely protest regarding racing qualifications or entries, 58 Pa. Code § 163.281(c). An agency is equally bound by its own regulations as those whom the agency seeks to regulate. *See In re Bentleyville Plaza Inc.*, 392 A.2d 899, 901 (Pa. Cmwlth. 1978). Should the Commission wish to limit this discretionary power, it may do so pursuant to 58 Pa. Code § 161.1(a).[6] We conclude, therefore, that the Commission erred as a matter of law in addressing the merits of the appeal after already concluding that the Stewards did not abuse their discretion.[7]

Accordingly, we reverse the order of the Commission and remand the matter to the Commission with the instruction that it vacate the Commission's revised order of finish.[8]

---

[6] Pursuant to 58 Pa. Code § 161.1(a), "[t]he Commission is invested with the power to enact appropriate rules and regulations necessary to effectuate the purposes and provisions of the act and to prevent circumvention or evasion thereof."

[7] We note that the Commission still has the authority to conduct its own investigations and adjudicative proceedings regarding potential rule violations. *See* 58 Pa. Code §§ 165.181(a), 165.179. The Commission, however, did not exercise those powers in the instant case. Instead, the Commission accepted an appeal of the Stewards' decision to not disqualify a horse.

[8] Because we are reversing on other grounds, we need not address the merits of Petitioner's argument relating to due process. We do, however, wish to note our concerns with the manner in which the Commission provided notice to Petitioner. First, as previously mentioned, the record does not establish any form of service on Petitioner. Instead, the Commission notified Reid of the upcoming hearing and advised him to relay the information to Petitioner. (R.R. at 17a.) Second, the hearing notice that the Commission provided to Reid is far less formal than that provided to Shaw. The hearing notice provided to Shaw totaled four pages, replete with information regarding

10

_____
P. KEVIN BROBSON, Judge

the form and substance of the upcoming hearing. (*Id.* at 13a-16a.) The hearing notice sent to Reid, however, totals one page. (*Id.* at 17a.) The notice states the general purpose for the hearing, but includes few of the formalities provided in Shaw's notice. Further, Reid's notice suggests that although Reid is entitled to attend, his attendance is not required. (*Id.*) While the Commission's regulations are silent as to whom is to receive notice and what that notice must contain, the Commission tacitly acknowledged that Petitioner is entitled to some form of notice when it instructed Reid to inform Petitioner of the upcoming hearing. Further, the record provides no explanation as to the contextual differences between Reid's and Shaw's notices.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Racing GAMbit, LLC,      :
       Petitioner   :
             :
   v.          :  No. 415 C.D. 2017
             :
State Horse Racing Commission,  :
      Respondent  :


# **O R D E R**

   AND NOW, this 9th day of April, 2018, the order and adjudication of the Commonwealth of Pennsylvania, Department of Agriculture, State Horse Racing Commission (Commission) is REVERSED, and the matter is remanded to the Commission with instructions that the Commission REINSTATE the original finishing order of the fifth race at Philadelphia PARX on September 25, 2016.

   Jurisdiction relinquished.


               _____
               P. KEVIN BROBSON, Judge